## LAKA TOOL AND STAMPING CO., INC.

v.

## The UNITED STATES

No. 425–78.

United States Court of Claims.

May 20, 1981.

Eugene Schaffel, New York City, atty. of record, for plaintiff. James N. Reyer, Buckley, Treacy, Schaffel, Mackey & Abbate, New York City, of counsel.

Cynthia C. Cummings, with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant. Dennis A. Wallace, Captain, JAGC, of counsel.

Before COWEN, Senior Judge, and KASHIWA and BENNETT, Judges.

ON PLAINTIFF'S AND DEFENDANT'S MOTIONS UNDER RULE 151 FOR REHEARING AND AMENDMENT OF JUDGMENT

BENNETT, Judge:

This case comes before the court on the parties' motions for rehearing and to amend judgment under Ct.Cl. Rule 151.[1] Plaintiff's motion raises issues previously considered and decided. Nevertheless, it has been carefully reviewed and is denied. Defendant's motion is more troubling and difficult, however, and we consider it here at length. Nonetheless, defendant's motion is also denied and we uphold our earlier result.

The facts in this case are fully set forth in our earlier opinion. *Laka Tool & Stamping Co. v. United States*, 226 Ct.Cl. ——, 639 F.2d 738 (1980). The case involved a contract to manufacture and deliver certain rifle magazines. The original specifications proved impossible of performance and were modified. Subsequently, plaintiff was unable to comply with even the modified specifications although they were found not to be impossible. Eventually plaintiff was terminated for default. It should be emphasized that plaintiff's eventual failure to perform was unrelated to the earlier impossible specifications. The court upheld the default as proper. However, the court held plaintiff entitled to recover those excess costs, if any, which plaintiff expended in attempting to comply with the original impossible specifications before modification. Since plaintiff's unexcused default was a breach, the court also allowed the Government's counterclaim for the amount of all progress payments it had made to plaintiff during the course of the contract, subject, of course, to any offsetting recovery by plaintiff. Plaintiff's claim was remanded to the Armed Services Board of Contract Appeals to allow plaintiff to make a showing that it had indeed made expenditures in attempting to comply with the impossible specifications and the amount of such unreimbursed expenditures. Although that showing remains yet to be made, we assume for the purposes of this opinion that there were such expenditures in some amount.

■ Defendant now contends that plaintiff should not be entitled to recover anything since it was properly defaulted and never delivered any acceptable goods under the contract, citing *Century Hone Div. of Desert Labs.*, ASBCA No. 18360, 78–1 BCA ¶ 12,990 (opinion by Trial Division recommending affirmance, filed Sept. 5, 1980, in Ct.Cl. No. 44–79) and *A. C. Hoyle Co.*, ASBCA No. 15363, 71–2 BCA ¶ 9137. This is an entirely new contention. It was not made to the court when the case was previously before us, nor were these cases cited and our opinion therefore has no discussion of the matter since it was never made an issue. The trial judge, in his opinion, had specifically and expressly held that plaintiff would be able to recover damages because of the impossible specifications despite plaintiff's subsequent failure to perform. Defendant never challenged that portion of the trial judge's opinion. Defendant does not indicate why it did not make this argument before. It cannot claim to have been unaware of the trial judge's reasoning. Normally this would be sufficient grounds for denying a motion for reconsideration. *Niagara Mohawk Power Corp. v. United States*, 207 Ct.Cl. 576, 594, 525 F.2d 1380 (1976) (order on rehearing); *Mason & Hanger-Silas Mason Co. v. United States*, 207 Ct.Cl. 183, 523 F.2d 1384 (1975) (order on plaintiff's motion for reconsideration); *General Electric Co. v. United States*, 189 Ct.Cl. 116, 416 F.2d 1320 (1969). Nevertheless, since we consider the question an important and difficult one, we have decided to consider it on its merits.

■ We have here a case where both parties defaulted on their contractual obligations. Defendant was the first to default by supplying impossible specifications. Plaintiff defaulted later by failing to deliver conforming goods under the modified specifications although such failure was unrelated to defendant's default. Defendant's default injured plaintiff by causing it an

---

1. Ct.Ct. Rule 151 is similar to Fed.R.Civ.P. 59.

out-of-pocket loss in the form of expenditures for efforts wasted because of the impossible specifications.[2] Had plaintiff completed the contract, it would have been entitled to recover the contract price plus an equitable adjustment for the wasted work. Instead, plaintiff defaulted and the Government never received the use or benefit of any of plaintiff's work. The question is whether defendant can now escape liability for that injury. That is, in cases where the contractor's work does not benefit defendant, is a contractor's subsequent failure to perform, for reasons unrelated to an earlier default [3] of defendant's, a complete defense to the contractor's earlier arising claim based on defendant's default? We hold that it is not a complete defense in all cases.

We decline to follow *Century Hone, supra*. The case does not bind us as there has been no decision therein by a panel of this court. In that case the contractor was terminated for default for failing to produce a machine that conformed to the Government's specifications. The contractor was held to be entitled to no relief for 37 unspecified constructive changes on the ground that the default termination was proper and the contractor had contributed nothing of value to the Government. If the case is read to hold that no claims survive a contractor's failure to perform under any and all circumstances, we find it too broad and decline to follow it. We express no opinion on whether or not the case reaches the correct result since in our view that would depend on facts not specified in the opinion.

▮ Although we hold that a contractor's failure to perform is not a complete defense to an earlier arising claim against the Government in all cases, it is difficult to fashion a rule of universal application at this point, the issue being one of first impression. Accordingly, we are left to delineate the factors which we feel make plaintiff's recovery just and equitable in the

instant case. We do so without holding that all these factors are necessary or that any one is determinative. We keep that open to be resolved by later cases. The first factor we note is that plaintiff's default was not willful and deliberate. Rather it came only after bona fide attempts to complete the contract which plaintiff was simply unable to do. Second, plaintiff's initial efforts were wasted solely by and as a direct consequence of defendant's default on its contractual obligation to supply specifications possible of performance.[4] Third, only plaintiff's excess costs in attempting to comply with the impossible specifications are recovered here. These are out-of-pocket reliance damages. We do hold that plaintiff's failure to perform is a good defense as to plaintiff's expectancy and any other reliance costs other than such excess costs in this case. Finally, defendant's action in supplying impossible specifications was something defendant had no right to do under the contract.

This last factor distinguishes the case where a contractor terminated for default would seek to recover for a mere change. The Government does have the right under the contract to issue change orders. If, instead of supplying impossible specifications, the Government had simply increased the amount of magazines required under the contract by change order and plaintiff had completed the contract, it would have been entitled to the contract price for the originally required work plus an equitable adjustment for the additional work. However, should plaintiff be properly terminated for default without making any acceptable deliveries in such a case, it would get nothing for the original work. Furthermore, our opinion today should not be read as allowing a recovery for work covered by a change order, even though the change order might have caused a plaintiff to do extra work just as the impossible specifica-

---

2. We reiterate that this loss is assumed only for purposes of this opinion.

3. By "default" in this context we mean a failure to comply with a contractual duty, whether

such failure would be normally redressable as a constructive change or as a breach of contract.

4. *See* note 1.

tions did here. A crucial distinction is that the Government does have the right to issue change orders. Furthermore, the work under such a change order is so comparable to the original work required under the contract that in fairness no distinction should be made between them and no recovery allowed for either the original or change order work.

It may next be seen that many constructive changes are so closely analogous to the change order in the above hypothetical that again there would be no cause for distinction and no recovery allowed the defaulting contractor. If the Government requested additional magazines by change order, it would have acted within its rights. If the Government requests extra magazines indirectly by a mistaken interpretation of the contract, we see no cause for distinction from the case of the change order.

The above analysis distinguishes the case of *A. C. Hoyle, supra,* which defendant also cites, from the case before us. There the contractor was required to manufacture and deliver two winches but failed to do so in a manner conforming to the specifications. In that case the contractor participated in the drafting of the specifications. That is not the case here. The winches were rejected and the board held the contractor properly terminated for default. However, the contractor was able to show that it had been required by the Government to supply four filters not actually called for by the contract. The board denied an equitable adjustment for the four filters solely because of the contractor's default. This seems to be the first board decision to have considered the question of recovery by a contractor who is terminated for default without contributing anything of value to the Government. The opinion offers no analysis for its conclusion and the only precedent cited is a board case where a defaulting contractor was allowed to recover for termination inventory taken by the Government. *Jules Teitlebaum,* ASBCA

No. 12885, 70–1 BCA ¶ 8210.[5] The opinion also is not clear as to whether the Government's request for the extra filters was based on a change order or a misinterpretation of the contract. In either case, based on our above analysis, the board's result would be correct. There is also no indication in *Hoyle* that any work was wasted, only that work was added. Added work, as already mentioned, is easily analogized to work properly required by the original contract. No recovery may be had for such work following the contractor's total default. There is no direct analogy where wasted work is involved and it is conceivable that in some constructive change cases this may be cause for distinction. In short, we find the *Hoyle* case distinguishable from the facts before us.

We believe our holding is consistent with the common law of contracts. Williston and the Restatement of Contracts have broad language which suggests a contrary view. That language is to the effect that an accrued right of action against a promisor for breach of contract is extinguished by a plaintiff's subsequent inability to perform. Restatement of Contracts § 277; 6 S. Williston, Contracts § 884 (1962). However, the position in those texts is based on cases where the accrued right of action is for the plaintiff's expectancy where plaintiff has suffered no out-of-pocket loss. Their analyses are not specifically directed at the instant case where the promisor's (defendant's) initial default does directly cause reliance damages, an out-of-pocket loss to plaintiff, and the question is who is to bear such loss. We therefore find such analyses inapplicable. *See* 6 A. Corbin, Contracts § 1256 (1962).

In summary, we are satisfied that our original judgment was correct. The parties' motions for rehearing and amendment of judgment have been considered without oral argument and are denied.

---

**5.** Cases where the Government does get some benefit from the contractor's work are distinguishable from the instant case and have permitted recovery despite the contractor's default, as defendant concedes. *Systems & Industry Optical,* ASBCA No. 21635, 79–2 BCA ¶ 13,966; *Harent, Inc.,* ASBCA No. 16206, 73–2 BCA ¶ 10,074.