**LAKA TOOL & STAMPING CO., INC.**

v.

**The UNITED STATES.**

No. 425–78.

United States Claims Court.

Dec. 17, 1984.

**214**

J. Michael Slocum, Falls Church, Va., for plaintiff; Phelps, Slocum & Boddie, Falls Church, Va., of counsel.

George M. Beasley, III, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant; Major Craig Clark and Lt. Col. Theodore Cathey, Dept. of the Army, Falls Church, Va., of counsel.

## OPINION

LYDON, Judge:

This government contract case is before the court for Wunderlich Act review (41 U.S.C. §§ 321, 322 (1976)) of a decision, adverse to plaintiff, by the Armed Services Board of Contract Appeals (the Board) on April 12, 1984. *Laka Tool & Stamping Co.*, ASBCA No. 21338 (Reinstated), 84–2 BCA, ¶ 17,326. This case was previously before the United States Court of Claims pursuant to a Wunderlich Act review request by plaintiff. *Laka Tool & Stamping Co. v. United States*, 226 Ct.Cl. 83, 639 F.2d 738 (1980), *reh'g denied*, 227 Ct.Cl. 468, 650 F.2d 270 (1981), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 645, 70 L.Ed.2d 6220. In its decision in this case, the Court of Claims, *inter alia*, remanded this case to the Board for further proceedings on the narrow issue of plaintiff's entitlement "to recover those excess costs, if any, which plaintiff expended in attempting to comply with the original impossible specifications before modification." (227 Ct.Cl. at 469, 650 F.2d at 271).[1] The April 12, 1984 Board decision, *supra*, represents the Board's compliance with the remand directive of the Court of Claims. Plaintiff challenges this Board decision on legal and factual grounds. Defendant maintains that the Board decision is correct as a matter of law and that plaintiff's challenges to certain Board "findings of fact" are without merit. Both parties have moved for summary judgment. Upon consideration of the briefs of the parties and oral argument, the court concludes that defendant's cross-motion for summary

1. In its decision, the Court of Claims further held that the termination of plaintiff's contract for default was proper and also "allowed the Government's counterclaim for the amount of all progress payments it [the Government] had made to plaintiff during the course of the contract, subject, of course, to any offsetting recovery by plaintiff [on remand]." (227 Ct.Cl. at 469, 650 F.2d at 271).

judgment should be granted and plaintiff's motion for summary judgment denied.

## I.

The background facts in this case were fully set forth in the earlier opinion of the Court of Claims (226 Ct.Cl. 83, 639 F.2d 738). Briefly, on June 4, 1975, plaintiff was awarded a contract by the United States Army Armament Command to manufacture and deliver certain rifle magazines. The original contract specifications proved impossible of performance in certain respects and accordingly were modified. However, plaintiff was unable to perform the contract under the modified specifications which were found not to be impossible of performance. Eventually, plaintiff was terminated for default. As indicated previously, the Court of Claims found this default termination to be proper, but remanded the case to the Board for a determination of the excess costs, if any, that plaintiff expended in attempting to comply with the original impossible to perform specifications before said specifications were modified.[2] The amount of any excess costs determined by the Board on this remand was to be offset against the amount of the Government's counterclaim.

Before the Board on remand, plaintiff filed a complaint seeking a recovery of $1,109,329. The supporting cost data were itemized on termination for convenience settlement proposal forms. There was no indication by plaintiff in this submission as to how the amount claimed related to the excess costs incurred by plaintiff prior to March 30, 1976 in attempting to satisfy the impossible 7-inch flatness requirement. The Board, properly viewing plaintiff's submission to be unrelated to the narrow issue remanded to it, directed plaintiff to file an amended complaint. In its amended complaint, plaintiff sought recovery of total costs of $365,000 incurred up to March 30,

1976, plus $147,290 incurred by a subcontractor, a total cost figure of $512,290. Again plaintiff did not attempt to break down these figures to show their relationship to the narrow remand issue. The Board again asked plaintiff for an explanation or breakdown of its claim. In response, plaintiff submitted a claim in the amount of $485,854.13 which indicated plaintiff was claiming all of its costs allocable to the contract from contract inception to March 30, 1976. Despite the Board's efforts to explain to plaintiff the difficulties with a total cost presentation and its emphasis on the need for some probative evidence to establish a linkage between the original impossible specification and the quantum of recovery sought, plaintiff persisted in its total cost approach.

Plaintiff moved the Board to reopen the record so that plaintiff could recover all the costs it incurred and not just those costs incurred in attempting to comply with the impossible specifications. Plaintiff argued before the Board, as it does before the court, that there was no accord and satisfaction relative to the March 30, 1976 agreement regarding the specification modification contrary to the holding by the Court of Claims that there was an accord and satisfaction. Too, plaintiff sought to recover the total costs it incurred under a termination for convenience despite the fact that the Court of Claims held that the termination of plaintiff's contract for default was proper (see 226 Ct.Cl. at 91–94, 639 F.2d at 743–744). Plaintiff argues that the Board erred as a matter of law in refusing to reopen the record for entitlement purposes. The court finds that the Board properly denied plaintiff's motion to reopen the record for entitlement purposes.

## II.

■ Plaintiff's efforts to reopen the record to retry its entitlement to recover all

---

**2.** Under the original specifications, plaintiff was required to satisfy an impossible 7-inch flatness requirement. On March 30, 1976, an agreement was reached between the contracting parties under which plaintiff was only required to satisfy the flatness requirement as to the 2½ inches of the magazine inserted into the rifle. As mod-

ified by this agreement, the specifications were no longer impossible of performance. The Court of Claims held that plaintiff was entitled to recover excess costs incurred prior to March 30, 1976, in attempting to comply with the impossible 7-inch flatness requirement.

the costs it incurred prior to March 30, 1976, flies in the face of the prior holding of the Court of Claims that plaintiff was only entitled to recover those costs, if any, it incurred in attempting to comply with the impossible specifications. This holding by the Court of Claims, along with its holdings that the March 30, 1976, agreement represented an accord and satisfaction and that plaintiff's default termination was proper, constitute the "law of the case" and were binding on the Board. Under the "law of the case" doctrine, legal issues previously determined by the same trial court or an appellate court in the same case are binding on the trial court or an administrative board throughout the case. *See Northern Helex Co. v. United States,* 225 Ct.Cl. 194, 197–202, 634 F.2d 557, 560–562 (1980). *See also Gindes v. United States,* 740 F.2d 947, 949–950 (Fed.Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 569, 83 L.Ed.2d 509. The prior holdings of the Court of Claims have neither been shown to be clearly erroneous or plainly wrong, *Department of Nat. Res. & Cons. of St. Of Montana v. United States,* 1 Cl.Ct. 727, 733–734 (1983); nor has plaintiff shown that an exception to application of the doctrine in this case is appropriate, *e.g.,* a change of law, discovery of new evidence, works a manifest injustice. *See Northern Helex Co. v. United States, supra.* Plaintiff's counsel asserted during oral argument that plaintiff is entitled to relief from the previous judgment of the Court of Claims based on RUSCC 60(b)(6). The court, however, finds no manifest injustice or any other reason in this case to warrant such relief.

The "law of the case" is clearly for application herein. Its application promoted judicial efficiency and prevented the possibility of endless litigation. *See Central Soya Company, Inc. v. Geo. A. Hormel & Co.* 723 F.2d 1573, 1580 (Fed.Cir.1983). Having concluded that the "law of the case" applies, plaintiff's attack (*i.e.,* lack of consideration) on the holdings of the Court of Claims set forth above, are deemed to be without merit.

It is well established that this court's review of a Board decision in a Wunderlich Act case is limited. From a factual point such review is limited to ascertaining whether there is substantial evidence to support the factual conclusions reached by the Board. *Koppers Co. v. United States,* 186 Ct.Cl. 142, 148, 405 F.2d 554, 557 (1968). From a legal point, such review is unfettered and the court is free to decide legal issues unrestricted by Board determinations thereon. *Truong Xuan Truc v. United States,* 212 Ct.Cl. 51, 64 (1976). However, the Board's legal determinations need not, and should not be ignored, for such determinations, given the Board's expertise in such matters, can be helpful and at times compelling. *See Hegeman-Harris & Co. v. United States,* 194 Ct.Cl. 574, 580, 440 F.2d 1009, 1011 (1971). A review of the record in this case establishes that the Board's findings of fact are supported by substantial evidence and its legal determinations are correct as a matter of law.

Plaintiff's motion to reopen the question of entitlement before the Board rested, *inter alia,* on the finding that the Board, in its first decision in this case, which was the subject of the Court of Claims decision of December 17, 1980 (226 Ct.Cl. 83, 639 F.2d 738), mistakenly attributed language from a publication which was not incorporated into the contract to ANSI Y 14.5–1973 which was incorporated into the contract. Plaintiff contends this mistake, admitted to be such by the Board, was so egregious as to warrant alteration of the prior holdings of the Court of Claims relative to the propriety of the March 30, 1976, accord and satisfaction and the default termination. The Board gave full consideration to this contention in its decision here under review. It found, in essence, that the mistake in language attribution was not egregious and in no way impinged on the correctness of the holdings of the Court of Claims mentioned above. The court has reviewed the record in the light of plaintiff's contention and is satisfied that the attribution error was harmless

error which did not detract from the correctness of the prior Court of Claims holdings in question. *See Sanders v. United States,* 219 Ct.Cl. 285, 310, 594 F.2d 804, 818 (1979). As a matter of law, giving due regard to the "law of the case" doctrine, the court concludes that the Board's denial of plaintiff's request to reopen the entitlement issue was correct.

■ Plaintiff next argues that the Board erred as a matter of law in limiting any recovery to those costs specifically associated with plaintiff's attempt to comply with impossible specifications. Plaintiff claims the Board misinterpreted the Court of Claims decision in 226 Ct.Cl. 83, 639 F.2d 738. This is clearly not so. In its decision of May 20, 1981, denying motions for rehearing by the parties, the Court of Claims, in referring to its prior opinion of December 17, 1980, stated in pertinent part:

> The court upheld the default as proper. However the court held plaintiff entitled to recover those excess costs, if any, which plaintiff expended in attempting to comply with the original impossible specifications before modification [on March 30, 1966]. [227 Ct.Cl. at 469, 650 F.2d at 271.]

The Board in its decision set forth its interpretation of the Court of Claims remand directive in pertinent part as follows:

> As we interpret the two decisions of the Court of Claims, appellant [plaintiff herein] is entitled to recover only the excess costs reasonably related to its attempt to meet the impossible 7-inch flatness requirement. The Court neither reversed the Board's decision as to the propriety of the default termination, nor did it necessarily allow appellant total recovery for all costs incurred prior to March 30, 1976. [84–2 BCA ¶ 17,326 at 86,330.]

As is readily apparent, the Board did not misinterpret the Court's remand directives. Instead, it followed them religiously.[3]

The problem in this case was plaintiff's refusal to proceed before the Board in accordance with the remand mandate of the Court of Claims. The Board, in its decision stated the problem in pertinent part as follows:

> In proceedings before the Board since the remand appellant has resisted all invitations to isolate in some reasonable fashion costs peculiar to attempts to meet the 7-inch flatness requirement as distinguished from other costs of establishing a production line and fabricating the magazine. The Board recognized that appellant might not be able to isolate from its records actual costs allocable to such attempts, but appellant has not even ventured an estimate, based on reasonable engineering judgment. Instead appellant has sought to have all of its incurred costs allowed, a result tantamount to converting the default termination into a termination for convenience. This we cannot do.

> Appellant's argument in support of the quantum now claimed is again an effort to set aside the termination for default and recover total costs of performance. * * * [84–2 BCA ¶ 17,326 at p. 86,330.]

In its decision on quantum, *i.e.,* determination of the excess costs, if any, plaintiff incurred in attempting to comply with an impossible specification, the Board stated in pertinent part as follows:

> Other than asserting entitlement to total cost recovery appellant has presented no evidence upon the basis of which we can even begin to approximate an amount for which appellant should be compensated pursuant to the terms of the Court of Claims remand. Under these circumstances, we can find no recovery. *Boyajian v. United States,* 191 Ct.Cl. 233, 423 F.2d 1231 (1970); *Joseph*

---

**3.** Plaintiff also indulges in other mischaracterizations of the Board's decision, which, on analysis, are clearly incorrect. For example, plaintiff states: "[T]he appropriate characterization of the situation [*i.e.,* the remand] is one of partial termination for convenience." (P. Br. pp. 25–26). There is no support for such a characterization in the two prior opinions of the Court of Claims in this case, the record in this case, or the Board decision under review.

*Pickard's Sons Co. v. United States,* 209 Ct.Cl. 643, 532 F.2d 739 (1976). [84–2 BCA ¶ 17,326 at p. 86,330.]

The record of the Board proceedings, and applicable case law cited by the Board, clearly support the Board's factual and legal determination that plaintiff was not entitled to any recovery on the remanded issue of entitlement.

▮ The court also concludes that plaintiff is entitled to no relief based on its allegations that defendant acted, throughout its contractual dealings with plaintiff, in bad faith. There is a strong presumption that government officials act properly. *See Eagle Constr. Corp. v. United States,* 4 Cl.Ct. 470, 479 (1984), *P Francini & Co. v. United States,* 2 Cl.Ct. 7, 11 (1983); *Burroughs Corp. v. United States,* 223 Ct.Cl. 53, 64–65, 617 F.2d 590, 597 (1980). To overcome this presumption, the law requires "well-nigh irrefragable proof." *See American General Leasing v. United States,* 218 Ct.Cl. 367, 374, 587 F.2d 54, 59 (1978); *Knotts v. United States,* 128 Ct.Cl. 489, 492, 121 F.Supp. 630, 631 (1954). The court finds no support in this record for plaintiff's allegations of bad faith, and thus, relief based on a claim of bad faith is denied.

## III.

▮ As indicated earlier, the Court of Claims held in this case that the Government was entitled to recover on its counterclaim the progress payments it had made to plaintiff. 226 Ct.Cl. at 95, 639 F.2d at 744. There is no dispute about the fact that defendant is entitled to recover on its counterclaim $288,606. This is established by application of the "law of the case doctrine" and the record in this case.[4] Fur-

ther, the matter of the Government's counterclaim was not remanded to the Board but was remanded to the trial division (now the United States Claims Court) for further proceedings to determine the proper amount of defendant's counterclaim recovery. As a result, the Board had no responsibility for nor connection with final action on said counterclaim.[5]

A simple reading of the two prior opinions of the Court of Claims in this case shows rather clearly that defendant was entitled to recover $288,606 from plaintiff, representing progress payments made to plaintiff for which defendant received nothing in return. It is also clear that to the extent plaintiff recovered, on remand, excess costs incurred in trying to comply with the original contract specification relative to the 7-inch flatness requirement, plaintiff would be entitled to set off these excess costs against the $288,606 Government counterclaim. *See* 226 Ct.Cl. at 95, 639 F.2d at 744. Since the Board properly found that plaintiff failed to establish any right to recovery on its remanded excess cost claim, it follows, without more, that the Government is entitled to a judgment of $288,606 herein.

▮ In its brief submitted to the Board, plaintiff contended that the amount due the Government on its counterclaim should be reduced by the cost of the termination inventory to the extent that such was not recognized by the auction sale. The matter of termination inventory was not an issue raised or considered in the prior Court of Claims opinions in this case. The Board stated that under the terms of the contract's Default clause, plaintiff was entitled to a credit for the fair market value of property removed by the Government. But

---

4. The Court of Claims in its decision (226 Ct.Cl. at 94, 639 F.2d at 744) noted that defendant's pleading sought $228,606 as the amount of progress payments made to plaintiff whereas the Board found plaintiff had received $228,606 in progress payments. The court felt that one of the figures, *supra,* contained a typographical error but could not tell at the time which figure was correct. There is now no dispute about the fact that the correct figure is $288,606.

5. While the Board offered some comments relative to the counterclaim, it acknowledged that "the calculation of the final amount owed by appellant [plaintiff] is before the United States Claims Court." (84–2 BCA ¶ 17,326 at p. 86,-330.) Plaintiff takes issue with these comments but proves absolutely nothing in the process. Plaintiff's brief, however, says very little that is helpful to its position regarding defendant's counterclaim.

the Board concluded plaintiff provided no evidence of fair market value of said inventory in the total cost approach it used, which approach the Board found did not provide a reasonable basis for measuring termination inventory value. *See* 84–2 BCA, ¶ 17,326 p. 86,330. On this record, the court can find nothing objectionable with the Board's finding in this regard and plaintiff has not provided any citation to the record or persuasive argument that would justify disregarding the Board's finding. Plaintiff raised the matter before the Board by brief only and sought to reduce the Government's counterclaim by some $70,400.35. Yet, the plaintiff presented no evidence as to how it arrived at the termination inventory value and the Board correctly noted that the matter of termination inventory was not adequately explored in the record. 84–2 BCA, ¶ 17,326 at p. 86,329. The Board found that the record would not support any setoff against the counterclaim figure of $288,606. The record supports the Board's finding in this regard.[6]

At the March 7, 1983, hearing in New York plaintiff was represented *pro se* by Eugene Laka, son of plaintiff's now deceased president. Eugene Laka had been given power of attorney by his parents to represent plaintiff in this case. At the opening of the hearing Eugene Laka moved for a continuance due to his lack of preparation and failure to acquire new counsel. This motion was appropriately denied by the Board. The history of this case, initially filed in 1978, demonstrates

that plaintiff procrastinated extensively throughout the litigation as detailed by the Board when it denied the continuance request. The Board found that it was justified in denying a continuance to allow plaintiff to acquire new counsel due to: 1) plaintiff's problem of retaining counsel, 2) numerous continuances filed previously by plaintiff, and 3) the fact that Eugene Laka agreed during a February 9, 1983 pre-hearing conference to the March 7, 1983, hearing date, subsequently asked for a change of venue from Washington to New York which the Board and defendant agreed to, and then at the beginning of the hearing plaintiff requested another continuance. It is clear from a review of the hearing record that the Administrative Law Judge (ALJ) used all efforts to aid Eugene Laka during the proceeding. The ALJ certainly gave plaintiff every opportunity to raise any issues and present any evidence it desired. However, plaintiff never presented the termination inventory issue until it submitted a brief after the hearing.

Defendant is entitled to recover $288,606 on its counterclaim. Plaintiff is not entitled to set off against this amount the excess cost, if any, it incurred in trying to comply with the impossible 7-inch flatness requirement specification because it failed to prove, although given ample opportunity and encouragement to do so, the additional costs that stemmed from such efforts. A total cost approach under such circumstances is totally unacceptable. *See Joseph Pickard's Sons Co. v. United States*, 209

---

6. An affidavit from the Administrative Contracting Officer, which defendant attached to its motion for summary judgment on its counterclaim, shows that the Government allowed plaintiff to dispose of the termination inventory. Any net proceeds of the sale of this inventory was to be deposited in an interest bearing account, with the disbursement of said funds to occur only with the consent of the Government and plaintiff or by court order. Proceeds from the sale of termination inventory, which plaintiff claimed cost $78,650.35, amounted to $8,250, were not turned over to the Government, but were retained by plaintiff. Moreover, plaintiff was given the opportunity at the March 7, 1983 hearing to present any evidence it desired concerning set off against the government's coun-

terclaim. However, plaintiff never raised the termination inventory issue at the hearing. Plaintiff raised this issue and asserted a value for the termination inventory in its brief submitted after the hearing. The board subsequently correctly determined that no evidence had been presented on the value of the termination inventory. Absent such evidence, the board was correct in finding that no termination inventory set-off credit was due plaintiff. *See Joseph Pickard's Sons Co. v. United States*, 209 Ct.Cl. 643, 652, 532 F.2d 739, 744 (1976). Accordingly, plaintiff still has an outstanding progress payment balance of $288,606 which it owes the Government relative to the defaulted contract in issue.

**220**

Ct.Cl. 643, 648–652, 532 F.2d 739, 741–744 (1976). Further, plaintiff is not entitled to set off against the Government's counterclaim the fair market value of the termination inventory because it failed to establish the value of said inventory and also because it disposed of said inventory by sale and retained the proceeds of said sale.[7]

 Finally plaintiff argues that the termination inventory matter was neither ripe for determination by the Board in 1984 nor is it ripe for the court's determination at this time. Under the terms of the Default clause plaintiff was entitled to a credit for the fair value of the termination inventory. Since the termination inventory issue was covered by the Default clause it was an issue for the Board to determine in the first instance, not the court. It is well established that claims for which the contract provides a remedy, which is the case here, must first be presented administratively at peril of being dismissed for failure to exhaust. *See United States v. Holpuch Co.,* 328 U.S. 234, 239–40, 66 S.Ct. 1000, 1003–04, 90 L.Ed. 1192 (1946); *United States v. Blair,* 321 U.S. 730, 735, 64 S.Ct. 820, 822, 88 L.Ed. 1039 (1944). Through its brief to the Board, plaintiff argued that the amount due the government on its counterclaim should be reduced by the value of the termination inventory not recognized at the auction sale. The Board determined, however, that plaintiff had failed to introduce any evidence on the value of the inventory and therefore, it found no basis for this court to reduce the amount due to defendant on its counterclaim. From this decision, the court concludes that plaintiff had an opportunity to present the termination issue but failed to introduce sufficient evidence to support its position. Given the protracted history of this case, it is not unfair to conclude that any attempt by

plaintiff to have the Board or the court consider this issue at this time, since any such consideration would occur after an unreasonable delay in a case that essentially commenced in 1976, would not be warranted by the Board or the court. *See Nager Electric Co. v. United States,* 177 Ct.Cl. 234, 259–60, 368 F.2d 847, 864 (1966).

### IV.

As a result of the above discussion, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted, with plaintiff's complaint to be dismissed and defendant to be awarded a judgment of $288,606 on its counterclaim.

---

7. There is nothing in the Board record which supports any setoff entitlement for plaintiff against defendant's counterclaim. Further, plaintiff has not submitted any affidavits or other material evidence in opposition to defendant's motion for summary judgment on its counterclaim. Plaintiff cannot rely on general allegations to defeat a motion for summary judgment. *See Royal Indemnity Co. v. United States,*

178 Ct.Cl. 46, 51, 371 F.2d 462, 465 (1967). Indeed, summary judgment should not be denied on the mere assertions of counsel that genuine issues of fact exist, nor should such a motion be denied merely to satisfy a litigant's speculative hope of finding some evidence that might save his complaint from dismissal. *See Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 626–27 (Fed.Cir.1984).