ROXCO, LTD., Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. 02–176 C.

United States Court of Federal Claims.

March 29, 2004.

**40**

E. Stephen Williams, Young, Williams, Henderson & Fuselier, P.A., Jackson, Mississippi, attorney of record for Plaintiff, Roxco, Ltd. James A. Pemberton, Falls Church, Virginia, of counsel.

David A. Harrington, Trial Attorney, Commercial Litigation Branch, Department of Justice, Washington, D.C., attorney of record for the Defendant. With him on the briefs were Robert E. Kirschman, Jr., Assistant Director, David M. Cohen, Director, and Peter D. Keisler, Assistant Attorney General. Bryan O'Boyle, Senior Trial Attorney, Commercial Litigation Division, Air Force Legal Services Agency, Arlington, Virginia, of counsel.

## OPINION

BASKIR, Judge.

The Plaintiff, Roxco Ltd. (Roxco), brings this action appealing the contracting officer's rejection of its claim for an equitable adjustment on a construction contract with the Air Force. The Defendant moves for summary judgment citing waiver, equitable estoppel, *res judicata*, and the Plaintiff's failure to contest a default termination. We reject the

Government's arguments and find Roxco's Complaint is timely as a challenge to the contracting officer's final decision denying Roxco's monetary claim.

**We grant the Plaintiff's Motion for Partial Summary Judgment and deny the Defendant's Cross–Motion for Summary Judgment.**

### Procedural History

Roxco filed this action pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601, *et seq.* (CDA) on March 7, 2002. The Plaintiff's Complaint, as amended, alleges its right to an equitable adjustment under the contract (Count I); breach of contract on the part of the Government (Count II); its entitlement to interest and litigation costs (Count III); and seeks reversal of a liquidated damages assessment (Count IV).

The Plaintiff filed a Motion for Partial Summary Judgment on August 22, 2003. Shortly afterwards, the Defendant filed a Cross–Motion for Summary Judgment. Roxco filed its Amended Complaint on October 17, 2003. The Court held oral argument on the motions. At oral argument, the Court requested additional briefing on the Defendant's *res judicata* theory. The supplemental briefing was complete as of February 27, 2004. We address the parties' arguments in turn.

### Chronology

The facts bearing on the cross-motions for summary judgment are not in dispute. On March 17, 1995, the Department of the Air Force (Air Force) awarded Contract No. F16602–95–C–0013 to Roxco (Contract). The contract, as amended, provided for the construction of 172 new housing units at Barksdale Air Force Base in Shreveport, Louisiana, and was for a total sum of approximately $18.9 million. August 5, 1996, was set as the contract's original completion date.

Within a matter of weeks disputes arose between Roxco and the Air Force, including alleged differing site conditions, constructive changes, and Government-caused delays and breaches of contract. Between April 1995 and August 1998, Roxco, through its Vice President, Mr. Patrick Leech, sent numerous

letters to the contracting officer (CO), Ms. Kathleen Lee, regarding these disputes. Fourteen of these letters are in the record. In the letters Roxco requested relief in the form of extra payment and time extensions, often noting that it was reserving its right to an equitable adjustment under the contract.

It appears on the record thus far that Ms. Lee did not respond to the majority of the issues raised by Roxco. The same issues were raised by Roxco time and again. Roxco complained about hidden concrete on the site, conflicting and improper issuance of verbal directives, additional testing frequency and costs, and harassment and over-inspection on the part of the Government. Relations between Roxco and the Government deteriorated to the point where in its letter to the CO, dated July 8, 1996, Roxco outlined the problems to date, stated it considered the situation to rise to the level of an "emergency," and again reserved its right to an equitable adjustment under the contract.

Not surprisingly, the original contract completion date of August 5, 1996, passed without the project being completed. On February 14, 1998, the Air Force unilaterally modified the contract, setting February 18, 1998, as the projected completion date, a date which also passed without the contract's completion. On October 16, 1998, Roxco's President, Mr. Ronald Robbins, executed what the Government terms the "abandonment" letter. The letter, addressed to the Department of the Air Force, stated, in relevant part,

> This is to advise you that Roxco, Ltd. as contractor on the above referenced construction project, is financially unable to perform or complete the performance of the work or comply with its contractual obligations on the project, and accordingly, is in default under the above contract for the project. Roxco, Ltd. hereby *irrevocably and voluntarily abandons and terminates the above construction Contract* effective immediately. (emphasis added).

To a large extent the Government's waiver theories turn on this paragraph, and especially the italicized phrase. The Government states that the Plaintiff thereby abandoned not only its obligations under the contract, but also its rights. However, the letter must be understood in its entirety and in the context of other communications between Roxco and the Government, both prior and subsequent to its execution.

Roxco's surety took over on November 5, 1998. On November 23, 1998, the Air Force sent Roxco a show cause letter. The letter stated that the Air Force was considering terminating the contract for default and offered Roxco an opportunity to explain the reasons behind its failure to perform. The letter mandated a response within 48 hours; Roxco did not respond.

The CO issued a notice of default termination on December 21, 1998. Under 41 U.S.C. § 609, Roxco had one year to appeal the termination for default. It did not. The Government argues that Roxco's failure to respond to the show cause letter or to appeal not only confirms its interpretation of the "abandonment" letter, but operate in themselves to bar the current CDA claims.

In the succeeding months Roxco's surety and the Air Force negotiated over a "takeover" agreement and there were a number of exchanges. Ultimately, these discussions broke down due in part to the surety's insistence that the agreement explicitly reserves Roxco's claims, and due to the Air Force's equally firm rejection of such language. Of course, the surety's position runs counter to the Government's interpretation of the "abandonment" letter.

For example, in the draft takeover agreement sent by Mr. James M. Mulvaney, an attorney representing the surety, to the Air Force on May 11, 1999, paragraph 3(g) contained language referring to Roxco's "pending change orders" and "amounts claimed by Roxco to be due." The CO, based on the advice of legal counsel and a belief that such orders did not exist, rejected the inclusion of paragraph 3(g) in a May 21, 1999, letter to Mr. Mulvaney.

An e-mail from Mr. Mulvaney to Ms. Barbara Rider, the contract administrator, sent on June 9, 1999, responded with:

> The preservation of claims that may be asserted by Roxco as was done in paragraph 3(g) of the form of takeover that I sent to you is essential. We understand

that Roxco has or may have claims related to this contract that would inure to or toward the satisfaction of the surety's loss on this and perhaps other federal contracts.

A takeover agreement was never executed. On August 20, 1999, the project was completed by Roxco's surety.

On March 30, 2001, Roxco submitted a CDA claim to the Air Force in connection with the contract. The claim sought equitable adjustments in the amount of $7,840,497.40 for alleged differing site conditions and constructive changes, or in the alternative, for alleged breaches of contract by the Government. The CO returned the claim to Roxco on November 9, 2001, based upon her determination that the claim was an untimely challenge to the contract's termination for default. Roxco appealed this decision by filing its Complaint on March 7, 2002.

On May 15, 2003, the CO issued a final decision assessing liquidated damages against Roxco. Subsequently, the Plaintiff filed its First Amended Complaint, adding Count IV, seeking reversal of the liquidated damage decision and an award of additional damages to Roxco.

### Standard of Review

Under Rule 56(c) of the Rules of the United States Court of Federal Claims, this Court will grant a motion for summary judgment where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. When the Court is presented with cross-motions for summary judgment, as in this case, we hold each party to that standard. *See, e.g., Cubic Defense Sys. v. United States*, 45 Fed.Cl. 450, 457 (1999).

### Discussion

The parties' motions debate many of the same issues, and at bottom, turn on the timeliness of Roxco's claim for an equitable adjustment. Anticipating many of the Defendant's arguments, Roxco first filed its motion. Roxco argued that its claim for an equitable adjustment was timely, both as a separate and distinct claim from the CO's termination for default decision and under the *Fulford* Doctrine.

In its Cross–Motion, the Government argued that:

1) Roxco's October 16, 1998, letter waived the claims it now asserts;

2) Roxco's failure to respond to the November 23, 1998, show cause letter constitutes a waiver of claims;

3) Roxco should be equitably estopped;

4) The CO's termination for default decision is *res judicata* respecting Roxco's CDA claims;

5) Roxco's failure to perform the contract is a complete defense to its claims;

6) Roxco's appeal of the rejection of its March 30, 2001, claim is untimely;

7) Roxco's claims contesting the assessment of liquidated damages are untimely.

We discuss the Government's assertions in turn.

### 1) Roxco's October 16, 1998, letter waived the claims it now asserts:

■ The Government argues that Roxco's letter of October 16, 1998, characterized as the "abandonment" letter, resulted in a complete waiver of Roxco's potential contractual claims. Roxco counters that it did not knowingly or implicitly waive any of the claims asserted in the present action. "Waiver consists of a *voluntary* and intentional relinquishment of a known right." *Cherokee Nation v. United States*, 174 Ct.Cl. 131, 140, 355 F.2d 945 (1966).

As we have already noted, the Government reads the letter as an abandonment not only of Roxco's obligations under the contract, but also its rights under the CDA. To do so, one must read our italicized words to that effect. We do not think the letter can fairly support such a reading. The first sentence of the paragraph makes clear that Roxco's financial situation precludes its completing its work, and therefore it is in default of performance. Its "abandonment" has to be read as referring to these predicates. There is no suggestion that Roxco is also abandoning any monetary claims it may have, and it is simply not reasonable to give the italicized words that scope.

Moreover, the letter must be read in the context of prior relations between the par-

ties. In earlier correspondence, Roxco had accused the Air Force of a prior material breach. A finding of prior material breach on the part of the Government would act as an affirmative defense to the Plaintiff's alleged breach. "Upon material breach of a contract, the non-breaching party has the right to discontinue performance, and to seek redress in accordance with law." *Stone Forest Industries, Inc. v. United States,* 973 F.2d 1548, 1550–1551 (Fed.Cir.1992).

We do not decide whether or not the Defendant's actions amounted to a prior material breach. Rather, we note during the course of communications between the parties Roxco time and again expressed its view that the Defendant was breaching the contract. In its letters Roxco repeatedly stated it reserved its rights under the contract, including the right to an equitable adjustment. One best reads the "abandonment" letter in the context of this repeated assertion.

Moreover, the Government in its show cause letter and notice of default termination stated that Roxco had the right to appeal the CO's decision in each of those matters. These statements are inconsistent with the Government's current allegation that Roxco waived all rights previously, by executing the "abandonment" letter.

As part of its waiver argument the Government posits that Roxco's post-termination silence confirmed its intent to "completely wash its hands of the contract." Complete silence on the part of Roxco, the Government argues, buttresses its waiver argument However, as we have earlier noted, post-termination, Roxco's surety continued to recognize Roxco's claims in a draft takeover agreement that it submitted to the CO. In particular, paragraph 3(g) of the proposed agreement refers to Roxco's "pending change orders" and "amounts claimed by Roxco to be due." Ms. Lee rejected the inclusion of paragraph 3(g).

Mr. Mulvaney e-mailed a response to her rejection, which we quoted at length above, stating that the preservation of Roxco's claims was "essential" to the surety. The record demonstrates the parties never executed a takeover agreement, in part because

the Government would not concede to the language preserving Roxco's claims, and the surety would not recede from its insistence.

We reject the Defendant's contention that a plain reading of the October 16, 1998, letter leads to the conclusion that Roxco waived the claims it pursues in this action.

*2) Roxco's failure to respond to the November 23, 1998, show cause letter constitutes a waiver of claims:*

■ The Government's second waiver argument is that Roxco's failure to respond to the Air Force's November 23, 1998, show cause letter evidences Roxco's waiver of the claims it now asserts in this action. The Government would have the Court substantially alter the traditional role of a show cause notice, expanding it to stand as either evidence of a previous waiver or result in a waiver when a contractor fails to respond within the time allowed by the CO.

> The purpose of a show cause notice is to 'provide the contractor with an opportunity to assert any excusable delay, and allow the government to assess whether the contractor can complete performance.'

5 John Cosgrove McBride & Thomas J. Touhey, *Government Contracts, Cyclopedic Guide to Law, Administration, Procedure* § 35A.80[3] (2001), *quoting Appeal of Lanzen Fabricating, Inc.,* ASBCA No. 40328, 93–3 BCA ¶ 26,079, 1993 WL 190380 (1993).

The show cause letter sent by the Air Force, notably during the week of the Thanksgiving holiday, mandated that Roxco had 48 hours to present, in writing, facts bearing upon whether or not its failure to perform resulted from "causes beyond your control and without fault or negligence on your part." A failure to present excuses would be deemed an admission. Roxco made no response to the show cause letter.

At oral argument, counsel for the Government admitted that the 48-hour time limit was determined by Ms. Lee and had no statutory or other legal basis. The Government argues that because the claims Roxco now asserts were potential defenses to the contract's termination for default, the failure to assert them in response is not only a waiver with respect to termination, but also

as regards identical grounds for CDA claims. These defenses include the Plaintiff's allegation that the Air Force breached the contract prior to October 16, 1998, and that Roxco was entitled to an equitable adjustment of approximately $7.8 million as of that date.

Roxco's claims are not merely defenses to a termination for default. They also stand alone as claims against the Government. Under the CDA, all claims presented separately to the CO are "distinct and subject to a distinct limitations period, despite their common contractual origin." *AAAA Enterprises, Inc. v. United States*, 10 Cl.Ct. 191, 193 (1986). A contractor has six years, not 48 hours, after the accrual of a claim to submit it to the CO for a decision, thus rendering Roxco's claims timely. 41 U.S.C. § 605.

The Government now applies the 48–hour time limit afforded by Ms. Lee's show cause notice to respond to termination to control on claims that the CDA expressly provides six years for. At oral argument, counsel for the Defendant provided no statutory basis or other authority for allowing contracting officers to arbitrarily set limits that shrink Congress' mandated time limit.

We reject the Government's attempt to use failure to respond to the Air Force's show cause letter on default termination as waiver of claims for which the CDA sets a six-year statute of limitations.

### 3) Roxco should be equitably estopped:

■ The Government urges that equitable estoppel is appropriate here because Roxco's actions were consistent with the Air Force's understanding that "Roxco was washing its hands of the contract." In order to invoke estoppel the Government must have reasonably relied on Roxco's conduct in changing its position for the worse. *See Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).

The Defendant states that the Air Force detrimentally relied upon Roxco's "abandonment" letter and failed to assess and catalogue the deficient work performed by Roxco and its subcontractors before allowing the surety to take over, thereby prejudicing its

own claims against Roxco. Also, it claims that the passage of time since then likely will result in lost evidence and witnesses.

Under 41 U.S.C. § 605, Roxco has up to six years after the initial accrual of a claim to submit it to the CO for a final decision. The Court first notes that the notice of default, the show cause letter, and the right to appeal each allow for the possibility of Roxco disputing their assertions. The Air Force's decision not to catalogue deficient work in preparation for a dispute over termination is a self-inflicted wound. While the passage of time generally results in lost evidence and witnesses, time's passage is not a sufficient reason for this Court to shorten Congress' statutorily prescribed period of time.

The Plaintiff counters that the Government's conduct was not reasonable and we agree. The Government's reliance argument depends, in large part, on the Court's acceptance of its waiver arguments, which we rejected above. Because we have rejected those arguments, the Government cannot now assert a *reasonable* reliance.

Within its correspondence with the Air Force, Roxco repeatedly served notice that it reserved its rights under the contract and noted that it might take future action. That Roxco chose to take action within the time period allowed by statute comes as no surprise to this Court, and it should not have surprised the Government.

### 4) The CO's termination for default decision is res judicata respecting Roxco's CDA claims:

In the Government's view, Roxco's claims should be barred through the application of *res judicata* to the CO's default termination decision. The Government argues that the claims Roxco now asserts would be barred because they could have been raised as defenses to the contract's termination for default.

An initial problem with the Government's position is in the scope it would have this Court afford the CO's termination decision. Were we to adopt the Government's position, all future equitable claims for relief which are submitted after the deadline has passed for an appeal of a CO's final decision on a

default termination would be barred. This contradicts the six-year statutory time limit allowed for the bringing of equitable claims. *See* 41 U.S.C. § 605.

The second problem is that the Government has not reviewed all of Roxco's claims, as counsel for the Defendant admitted at oral argument. Roxco submitted a five-volume claim for equitable adjustment. The Government seeks to bar all of these claims on *res judicata* grounds, claiming that they are included in the scope of the CO's termination decision. However some of the claims that Roxco may have asserted, i.e. increased testing costs or differing site conditions, are of the sort that may be raised as equitable adjustment claims but would not necessarily act as defenses to a default termination. Without reviewing the factual bases underlying the equitable claim and comparing them to the bases for the termination for default, the Government's *res judicata* argument is incomplete.

Ultimately, the Court need not confront these problems because there is no valid legal support for the Government's position that a CO's final decision should be afforded *res judicata* status. In support of its position, the Government cites 41 U.S.C. § 605(b), under which an unappealed CO's final decision becomes "final and conclusive and not subject to review by any forum, tribunal, or Government agency," and *Mobility Systems & Equipment Co. v. United States*, which states § 605(b) "serves as a form of res judicata." 51 Fed.Cl. 233, 235 (2001) (*Mobility Systems*).

■ While *res judicata* exists primarily as a function of the courts, final determinations of administrative bodies may be afforded *res judicata* status. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991), *citing United States v. Utah Constr. & Mining Co*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). The Plaintiff quite correctly points out that

the Ms. Lee did not act in a judicial capacity and there was no adversarial proceeding between the Government and Roxco. Significantly, Roxco's only opportunity to present evidence in this matter was if it responded within 48 hours to the CO's show cause letter.

■ In *Mobility Systems*, the Court uses the term *res judicata* as an analogy for the effect of the Election Doctrine of the CDA. The Election Doctrine refers to the choice a plaintiff must make in appealing a CO's final decision—either to an agency's board of contract appeals or to this Court. "Essentially, the Election Doctrine serves as a form of *res judicata*. Its purpose is to settle controversies in one forum." *Id.*

The Government argues for the literal application of that analogy. This position is unsupportable from a plain meaning point of view. By definition *res judicata* requires either a court or another appropriate body to render a final decision on the merits. *See, e.g.,* Ballentine's Law Dictionary (Lexis 1969). *Res judicata* means "literally, the thing has been decided, been adjudicated." *Id.* By contrast, the Election Doctrine refers to a choice of forum to adjudicate those disputes. The concepts are totally different.

Congress did not intend that *res judicata* effect should be afforded to the final decision of a CO. "Courts do not, of course, have free rein to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand. In this context, the question is not whether administrative estoppel is wise but whether it is intended by the legislature." *Astoria Fed. Sav. & Loan Ass'n,* 501 U.S. at 108, 111 S.Ct. 2166. Congress expressly stated that the CO's final decision shall have limited effect on subsequent proceedings. Congress provided that the "specific findings of fact...if made, shall not be binding in any subsequent proceeding," recognizing that the finality afforded to the CO's decision extends only to the specific claim involved. 41 U.S.C. § 605(a).

In raising its equitable claims, Roxco is not barred from relying upon contentions rejected by the CO in the unappealed default termination. Roxco may challenge any find-

ings of fact made by the CO in the termination decision. "This is because under the CDA, proceedings before the contracting officer do not provide the parties with an opportunity actually to litigate the issues such that the decision by the contracting officer can, appropriately, be afforded issue preclusion status in other claims." *Russell Corporation v. United States*, 15 Cl.Ct. 760, 763 (1988).

The Court afforded the Defendant a further opportunity after oral argument to supplement its position on *res judicata*. The Government's later briefing merely buttressed the Court's determination that *res judicata* does not apply in this matter.

### 5) Roxco's failure to perform the contract is a complete defense to its CDA claims:

■ The Defendant argues that *Laka Tool & Stamping Co. v. United States* controls barring Roxco's claims. 227 Ct.Cl. 468, 650 F.2d 270 (1981) (*Laka Tool*). *Laka Tool* involved a contract to manufacture and deliver rifle magazines. The original contract specifications proved impossible to perform and were modified. The contractor failed to comply with the modified contract and was subsequently terminated for default.

The contractor brought suit to recover the costs it incurred in attempting to perform the initial, impossible contract. The Court denied the claims. It fashioned a multi-factored test to determine where equitable relief would be due to similarly situated plaintiffs. *Laka Tool* is explicitly limited to cases where the Government receives no benefit from the contractor's work:

> Cases where the Government does get some benefit from the contractor's work are distinguishable from the instant case and have permitted recovery despite the contractor's default, as defendant concedes.

*Id.* at 473, 650 F.2d 270. *Laka Tool* is clearly inapplicable to the present case. Roxco's contract was terminated after partial performance.

### 6) Roxco's appeal of the rejection of its March 30, 2001, claim is untimely:

A certified claim requesting equitable adjustments in excess of $7 million was submitted on March 30, 2001. On November 9, 2001, after a delay of several months, the CO returned the claim to Roxco as untimely filed. She reasoned that because Roxco failed to appeal the notice for default termination within the one-year time frame provided by the CDA, its request for equitable adjustment was rendered moot. We note that under 41 U.S.C. § 605(c)(2) Ms. Lee's response was itself tardy.

While the CO did not frame it as such, her decision to reject Roxco's request for equitable adjustment may be viewed as a final decision. If her action is a failure to issue a final decision, under the CDA it is deemed a final decision and authorizes Roxco's commencement of this suit. *See* 41 U.S.C. § 605(c)(5). The CDA provides contractors with up to twelve months to appeal a final decision of a CO. Roxco filed an action with this Court on March 7, 2002, challenging this final CO decision. It is clear that Roxco is not challenging the earlier termination for default decision. *Cf. American Telecom Corp. v. United States*, 59 Fed.Cl. 467 (2004) (holding that the Court lacked jurisdiction to entertain a contractor's claim seeking the conversion of a termination for default to a termination for convenience, but possessed jurisdiction to hear the contractor's challenge against the assessment of reprocurement costs).

### 7) Roxco's claims contesting the assessment of liquidated damages are untimely:

■ Roxco's Complaint has a second ground for timeliness under the *Fulford* Doctrine. This Court has adopted the *Fulford* Doctrine, which was first articulated by the Armed Services Board of Contract Appeals (ASBCA) in *Fulford Manufacturing Co.* ASBCA Nos. 2143, 2144 1955 ASBCA LEXIS 970, 1955 WL 808 (May 20, 1955), *see D. Moody & Co., Inc. v. United States*, 5 Cl.Ct. 70, 72 (1984). "The simple proposition embodied by the *Fulford* doctrine is that when a contractor timely appeals an assessment of excess reprocurement costs, the propriety of the Government's default termination can be challenged even though the default termination decision was not appealed." *D. Moody & Co., Inc.*, 5 Cl.Ct. at 72. In apply-

ing the *Fulford* Doctrine, Judge Futey has noted that,

> Since the assessment of excess costs does not ordinarily occur at the time of the default termination, a contractor may choose not to contest the default termination because the contractor does not anticipate any monetary liability. The Fulford Doctrine allows the contractor, on timely appeal of a default termination of excess costs, to contest the propriety of a default termination even though there was no timely appeal of the default action.

*Marshall Associated Contractors, Inc. v. United States*, 31 Fed.Cl. 809, 815 (1994).

The doctrine avoids unnecessary litigation. Because not all terminations are followed by the assessment of extra costs or the assertion of equitable claims, a contractor might not have a monetary interest in appealing a default termination. It would be a waste of resources to require contractors to immediately appeal all default terminations. To hold otherwise would result in the anomalous situation in which a contractor litigates and the Government defends when neither party has a financial interest in the outcome. Moreover, the preparation of an equitable adjustment claim may be a complicated and time-consuming process. A contractor may not be able to prepare such a claim within the often time-sensitive decision to terminate for default, in this case, 48 hours. The six-year CDA statute of limitations recognizes this. Separating the issues of termination and equitable claims fits well within *Fulford's* dichotomy.

■ The actions of the CO with respect to the Air Force's liquidated damages assessment is consistent with this view. In this case, the CO assessed liquidated damages against Roxco over four years after she issued a notice of default termination. The final decision on liquidated damages notes "As you [Roxco] have not provided any documentation to dispute the amount of liquidated damages incurred, the liquidated damages in the amount of $909,791.00 stand and you are instructed to make payment..."

The Federal Circuit recently noted that *Fulford* is not binding precedent upon this Court. *See J.C. Equipment Corp. v. Eng-*

*land,* 360 F.3d 1311, 1317–18 (Fed.Cir.2004). But the Court did not foreclose the use of the doctrine. The Court held that where a contractor failed to initially present its claim to the contracting officer, seeking to convert a termination for default into a termination for convenience, the Board of Contract Appeals lacked jurisdiction to hear that claim. *Id.* at 1317–19. Roxco has properly submitted its claims to the CO, meeting the CDA's exhaustion requirements. *See* 41 U.S.C. § 605(a). The Court declined to apply *Fulford* in *J.C. Equipment Corp.* because no excess costs were assessed against the contractor, the contractor had completed performance, and there had been no reprocurement by the Government. *Id.* at 1318–19. Until a clearer statement to the contrary comes from the Federal Circuit, we believe that *Fulford* continues to qualify as an equitable doctrine.

Under the *Fulford* doctrine, Roxco had one year from the CO's assessment of liquidated damages, during which to appeal or file suit in this Court. Roxco's Amended Complaint was filed on October 17, 2003, adding Count IV, seeking reversal of the liquidated damage decision and an award of additional damages to Roxco. Having complied with the prescribed one-year deadline, Roxco's Amended Complaint is timely.

### Conclusion

Because we reject each of the Government's theories seeking to dismiss Roxco's Complaint, **we deny its Cross–Motion for Summary Judgment. Roxco's Motion for Partial Summary Judgment** was essentially defensive or anticipatory of the Government's motion, and consequently it is **granted.** The **parties are to submit a Joint Status Report no later than April 30, 2004,** proposing a schedule for further proceedings in this matter.

**IT IS SO ORDERED.**