# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Military Aircraft Parts ) ASBCA No. 60139
)
Under Contract Nos. SPM4A7-12-M-3228 )
SPM4A7-12-M-3284 )

APPEARANCE FOR THE APPELLANT: Mr. Robert E. Marin
President

APPEARANCES FOR THE GOVERNMENT: Daniel K. Poling, Esq.
DLA Chief Trial Attorney
Edward R. Murray, Esq.
Jason D. Morgan, Esq.
Trial Attorneys
DLA Aviation
Richmond, VA

## OPINION BY ADMINISTRATIVE JUDGE O'SULLIVAN ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Appellant Military Aircraft Parts (MAP) appeals from the contracting officer's deemed denial of its claim for breach of contract and damages in connection with three purchase orders issued by DLA Aviation.[1] The government, DLA Aviation (DLA), filed the pending motion to dismiss, contending that MAP never timely appealed the default terminations on any of the three orders and its current appeal is nothing more than an attempted end run around the Contract Disputes Act's 90-day jurisdictional deadline for appeal of a contracting officer's final decision to the boards of contract appeals. 41 U.S.C. § 7103(a). We grant the motion and dismiss the appeal as it pertains to Purchase Order Nos. SPM4A7-12-M-3228 and SPM4A7-12-M-3284.

---

[1] MAP originally elected to proceed under Board Rule 12.2 (expedited appeals). This appeal was subsequently removed from the Board's Rule 12 docket in order to resolve the jurisdictional issue raised by the government before proceeding. This decision involves only two of the purchase orders. The Board has requested supplemental briefing with respect to the third.

<u>STATEMENT OF FACTS FOR PURPOSES OF THE MOTION</u>

On 23 January 2012, DLA awarded Contract No. SPM4A7-12-M-3284 (Contract 3284) to MAP for aircraft structural parts. Contract 3284 required a first article and ten production parts for a total price of $15,250. (Mot., ex. A at 1, 9-10) On the same date, DLA awarded Contract No. SPM4A7-12-M-3228 (Contract 3228) to MAP for mirror-image aircraft structural parts to be used on the opposite side of the plane (compl. ¶ 5; mot., ex. E at 1). Contract 3228 also called for one first article and ten production parts for a total price of $15,250 (mot., ex. E at 9-10).

Both of these contracts contained the Federal Acquisition Regulation (FAR) 52.209-4, FIRST ARTICLE APPROVAL—GOVERNMENT TESTING (SEP 1989)— ALTERNATE 1 (JAN 1997) (mot., ex. A at 15, ex. E at 14).[2] In pertinent part, this clause provides as follows:

> (b) Within 120 calendar days after the Government receives the first article, the Contracting Officer shall notify the Contractor, in writing, of the conditional approval, approval, or disapproval of the first article. The notice of conditional approval or approval shall not relieve the Contractor from complying with all requirements of the specifications and all other terms and conditions of this contract. A notice of conditional approval shall state any further action required of the Contractor. A notice of disapproval shall cite reasons for the disapproval.

> c) If the first article is disapproved, the Contractor, upon Government request, shall submit an additional first article for testing. After each request, the Contractor shall make any necessary changes, modifications, or repairs to the first article or select another first article for testing. All costs related to these tests are to be borne by the Contractor, including any and all costs for additional tests following a disapproval. The Contractor shall furnish any additional first article to the Government under the terms and conditions and within the time specified by the Government....

> (d) If the Contractor fails to deliver any first article on time, or the Contracting Officer disapproves any first article, the Contractor shall be deemed to have failed to

---

[2] FAR 52.209-4 is not set forth in full text in the contracts.

2

make delivery within the meaning of the Default clause of this contract.

    ....

    (h) Before first article approval, the acquisition of materials or components for, or the commencement of production of, the balance of the contract quantity is at the sole risk of the Contractor. Before first article approval, the costs thereof shall not be allocable to this contract for (1) progress payments, or (2) termination settlements if the contract is terminated for the convenience of the Government.

The contracts also contained the FAR 52.249-8, DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984) clause (mot., ex. A at 17, ex. E at 17).

MAP delivered parts for first article testing (FAT) to Hill AFB, Utah, between 23 October and 29 October 2012 (compl. ¶ 9). On 9 November 2012 DLA requested a clearer copy of one of the required raw material certifications. Because MAP thought it would be unable to secure one from the supplier, it requested contract cancellation on 28 November 2012. However, on 21 December 2012 MAP succeeded in obtaining a clearer copy and forwarded it to DLA. (Compl. ¶ 10)

By letter dated 24 January 2013, DLA contracting officer (CO) Alicia Wolford informed MAP that its first article (FA) submission on Contract 3284 was disapproved for the following reasons contained in an attached Discrepancy List dated 11 December 2012. First, it "was formed opposite then [sic] required.... The contractor's submitted article flat pattern is correct but is rolled the wrong direction." Second, "[m]aterial certification provided with document package is illegible. This office requested a legible copy; however the contractor replied best copy submitted." Third:

    Requirement: Finish per NFS 70, this part should be considered an internal part. It is sandwiched between the inlet duct skins and a former. So per item 3.7.3 of NFS 70, it should be passivated per FP-79 and primed with NAI-1269 per FP-80.
    Note: Per EO NAI-1269 is replaced by MIL-PRF-85582.
    Actual: Incorrect finish applied. The item contains top coat, this item should not contain top coat.

(Compl., ex. A at 4-5) CO Wolford further stated in the 24 January 2013 letter that "a bilateral modification cancelling this contract per your email dated December 22, 2012 is forthcoming to you" (id. at 4).

By Show Cause Notice dated 21 February 2013, DLA CO Janice Hicks informed MAP that its FA submission on Contract 3228 was disapproved for the identical three reasons that its FA submission under Contract 3284 was disapproved (compl., ex. A at 1). She further stated that the government was considering terminating the contract for default but that MAP would first have the opportunity to make its case that the failure to provide an FA meeting contract requirements arose from causes beyond its control and without its fault or negligence. MAP was given 10 days to do so following its receipt of the notice. (*Id.* at 1-2)

On 5 March 2013 MAP responded to COs Hicks and Wolford via email with the following information:

### Finish Requirement:
1. We concur NFS-70 Section 3.7.3 requires passivation and primer per MIL-PRF-85582. This was performed on all surfaces of this item.
2. However, NFS-70, Section 6.6.2 (see attached) appears to require aluminum colored topcoat per MIL-PRF-85585 over the primer on the interior surface only. This was applied in accordance with this spec. Certifications from the FA package are attached. Obviously omission of the topcoat can be performed on production parts without issue.

### Forming:
1. This item was fabricated at the same time as the opposite, P/N 3-11753-18, NSN 1560-01-597-5636 from Contract SPM4A7-12-M-3284.
2. The two parts were interchanged inadvertently and partmarked improperly. MAP will take steps to preclude this by using the forming fixtures as final partmark inspection templates in its traveler.

### Material Certification:
1. On 11/9/12 Tim Farley/DLA requested a clearer copy of the material cert.
2. On 11/28/12 our material vendor stated it was impossible to obtain the cert. See email from Lolita Fonza/TW Metals.
3. On 12/5/12 I requested contract cancellation based on this information and because of our issues with late deliveries of product.

4

4. On 12/21/12 I unexpectedly obtained the certification and forwarded it to DLA and our contracting officer. I believe this should be sufficient to satisfy the DLA request.
5. On 12/22/12 we negotiated with DLA for a list of contracts to be canceled that would make our backlog manageable. Based on this negotiation we removed our request to cancel this contract from the cancelation [sic] list submitted to DLA.
6. On 2/26/13 we received the attached show cause notice.

In conclusion, MAP stated its belief that the items were fabricated "sufficiently acceptably" and requested conditional first article approval in accordance with the contract's first article clause. (Compl., ex. B at 1)

The record before us does not include a Rule 4 file. Nevertheless, it appears from the narrative of MAP's later-submitted claim that DLA responded to this 5 March 2013 submission from MAP on 12 March 2013 telling MAP that it needed to "provide empirical evidence of an error on the part of the FAT lab before a rebuttal will be considered" (compl., ex. C at 2). CO Hicks subsequently issued notices of her final decision to terminate the contracts for default on 1 April 2013 (mot., exs. C, G). These notices were followed by contract modifications dated 2 April 2013 effecting the default terminations for the two contracts (id., exs. B, F). MAP received the notices of default termination on 4 April 2013 (id., exs. D, H). There is no dispute that MAP did not file a timely appeal of the termination decisions.

On 27 April 2015, MAP submitted to CO Hicks a claim for breach of contract damages consisting of anticipatory profit in the amount of $43,333.98. MAP claimed that the actions of the government in improperly disapproving rather than conditionally approving MAP's first article parts, failing to reasonably consider the relevant facts submitted in response to the notices of default termination, and failing to consider that MAP was supplying acceptable parts under later contracts were either express breaches of the contracts or breaches of the implied duty of good faith and fair dealing. (Compl., ex. C at 1-2) CO Hicks responded on 22 May 2015 that the contracts had been terminated for default and that "DLA Aviation is unwilling to revisit its previous decisions and considers the matter closed" (compl., ex. D). CO Hicks did not issue a final decision on MAP's claim.

On 25 August 2015 MAP filed with the Board its appeal from the contracting officer's deemed denial of its claim. The government's motion to dismiss for lack of jurisdiction followed thereafter on 28 August 2015, and by order dated 3 September 2015 the appeal was removed from the Board's 12.2 docket pending decision on the jurisdictional issue. MAP filed its response to the government's motion on 6 October 2015.

5

DISCUSSION

DLA contends that MAP's failure to timely appeal from the default terminations deprives the Board of jurisdiction to consider MAP's appeal from the CO's deemed denial of its 27 April 2015 claim. It points out that the Contract Disputes Act (CDA) requires that an appeal to the Board from a contracting officer's final decision (COFD) be filed within 90 days of the contractor's receipt of the COFD, 41 U.S.C. § 7104(a), and that this appeal period is "statutory, strictly construed, and cannot be waived." *Alnawars Co.*, ASBCA No. 58678, 13 BCA ¶ 35,463 at 173,909 (citing *Cosmic Construction Co. v. United States*, 697 F.2d 1389, 1390-91 (Fed. Cir. 1982)). Furthermore, the government cites to 41 U.S.C. § 7103(g), which provides that a "contracting officer's final decision...is final and conclusive and is not subject to review by any forum, tribunal, or Government agency, unless an appeal or action is timely commenced" (mot. at 3-4).

It is DLA's position that the thrust of MAP's complaint, although clothed in breach of contract language, is a challenge to the CO's 2013 default terminations. DLA cites to allegations in MAP's complaint that the CO "abused her discretion," the CO "failed to consider the urgency of the contracts at the time of termination," and "the Contracting Officer's decision to Terminate for Default was not made independently" as obvious challenges to the underlying default terminations. (Mot. at 4) DLA urges the Board to consider the policy implications of allowing MAP to pursue its breach of contract claim, claiming that to do so "would risk disturbing every contracting officer's final decision over the past six years. Contractors would simply recast their untimely appeals as affirmative claims and begin the disputes process anew." (*Id.* at 5)

In response, MAP insists that its appeal is from a deemed denial of its claim for breach, filed within the allowed 90-day period, and that its 27 April 2015 claim, with respect to contracts awarded in 2012, is clearly within the CDA's six-year statute of limitations. Citing *Roxco, Ltd. v. United States*, 60 Fed. Cl. 39, 44 (2004), MAP argues its claims presented to the CO "are not merely defenses to a termination for default. They also stand alone as claims against the Government. Under the CDA, all claims presented separately to the CO are distinct and subject to a distinct limitations period, despite their common origin.'" (App. resp. at 10)

In the alternative, MAP suggests that this would be an appropriate case in which the Board could apply the reasoning of *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1313 (Fed. Cir. 2014), to find that the CDA's 90-day appeal period is not jurisdictional.

The CDA not only provides a 90-day period for appeal of a COFD to this Board, 41 U.S.C. § 7104(a), but also states that the "contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal

6

Government agency unless an appeal or action is timely commenced as authorized by this chapter." 41 U.S.C. § 7103(g).

We have a long line of Board precedent holding that the 90-day appeal period under the CDA is jurisdictional, absolute, and may not be waived. *Waterstone Environmental Hydrology and Engineering, Inc.*, ASBCA No. 57557, 12-1 BCA ¶ 35,028. The United States Court of Appeals for the Federal Circuit confirmed our interpretation of the 90-day appeal period as jurisdictional in *Cosmic Construction Co. v. United States*, 697 F.2d 1389, 1390-91 (Fed. Cir. 1982), in which the court stated that the appeal period is part of a statute that waives sovereign immunity and "defines the jurisdiction" of the Board. We are bound by our appellate authority and we decline MAP's invitation to hold otherwise.

MAP's affirmative claim sets forth actions on the part of DLA—improperly disapproving rather than conditionally approving MAP's FA parts, failing to reasonably consider relevant facts contained in MAP's response to the notices of default termination—that may have constituted breaches of both express contract provisions and the implied duty of good faith and fair dealing. However, MAP's claim that DLA breached the contracts prior to issuing its default termination decisions is not a claim that can be pursued without attacking the default terminations. While the claim may be more than a mere defense to the terminations, it is based on the same set of facts, circumstances, and actions preceding the default terminations and is inextricably bound up with the issue of the propriety of those terminations. We have allowed only one exception to the rule that a challenge to a default termination must be the subject of a timely appeal, and that is in the event that the government, subsequent to the default termination, assesses excess reprocurement costs.

The *Fulford* doctrine was first articulated in *Fulford Manufacturing Co.*, ASBCA Nos. 2143, 2144, 6 CCF ¶ 61,815 (20 May 1955) (CCH) (digest only), in which we held that a timely appeal of an assessment of excess reprocurement costs allows the Board to examine the propriety of an underlying default termination even though no timely appeal was taken from the termination decision itself. The holding in the *Fulford* case was concerned with the interplay between the excusable delay and excess reprocurement cost provisions of the contract's Default clause and their relationship to the finality provision of the Disputes article. The Board found an ambiguity in these provisions and construed this against the government as the drafter of the clauses. *Dailing Roofing, Inc.*, ASBCA No. 34739, 89-1 BCA ¶ 21,311 at 107,474; *Mactek Industries Corp.*, ASBCA No. 33277, 87-1 BCA ¶ 19,345 at 97,866.

As originally conceived, the doctrine limited the scope of challenge to the propriety of the termination to the issue of excusable delay. *Dailing Roofing*, 89-1 BCA ¶ 21,311 at 107,474. Prior to the CDA's enactment, however, the permissible scope of challenge had been broadened to encompass the consideration of any challenge to the original unappealed default termination whenever a timely appeal was taken from a decision assessing excess costs. *Id.* The doctrine has continued to be applied under the CDA, beginning with

7

*Western Industrial Corp.*, ASBCA No. 24969 *et al.*, 81-1 BCA ¶ 15,093, and continuing for the last 35 years. We have consistently rejected attempts to expand the doctrine to allow challenges to unappealed default terminations in the context of government claims for damages other than excess reprocurement costs, or for unliquidated progress payments, because such claims may be asserted independent of whether or not the contract has been terminated for default. *Dailing Roofing*, 89-1 BCA ¶ 21,311 at 107,475. By contrast, termination of the contract for default, in whole or in part, is a prerequisite to a claim for excess reprocurement costs. *Id.*

*Dailing Roofing* involved a contractor's appeal from a COFD demanding return of unliquidated progress payments and asserting a multi-million dollar claim for damages due to a fire allegedly caused by the contractor's negligence. The contractor had failed to appeal an earlier COFD terminating the contract for default. The government moved to strike paragraphs of the complaint and a portion of the prayer for relief alleging that the earlier termination was improper and requesting that it be converted into a termination for convenience, on the basis that they were outside the proper scope of the appeal and beyond the Board's jurisdiction. The contractor argued that the Board should consider the propriety of the default termination under the *Fulford* doctrine. However, since no part of the government's claim for damages in *Dailing Roofing* was for excess reprocurement or excess completion costs, the Board granted the government's motion to strike the portions of the complaint challenging the propriety of the default termination. 89-1 BCA ¶ 21,311 at 107,476.

In *Mactek Industries*, the default termination was not timely appealed. Rather, the contractor timely appealed from the government's decision demanding the return of unliquidated progress payments. The contractor urged that the *Fulford* doctrine be applied to allow it to challenge the propriety of the default termination, under the theory that the government claimed entitlement to unliquidated progress payments as a direct result of the alleged default. The Board rejected this contention, stating in relevant part:

> [W]ere we to apply the *Fulford* analogy to the present situation and thus "open up" the default termination for review, as appellant proposes, we would have to ignore the provision in § 605(b) of the CDA that a contracting officer's decision "shall be final and conclusive" unless an appeal or suit is timely commenced "as authorized by this chapter". The only authorization regarding the Board is found in § 606 which establishes the 90-day appeal period. This provision is part of a statute waiving sovereign immunity and thus must be strictly construed. *Cosmic Construction Co. v. United States, supra.* The doctrine of strict construction of the consent to be sued requires "that if there is real ambiguity in a statutory consent, the

ambiguity must be resolved against the broad construction."

*Mactek*, 87-1 BCA ¶ 19,345 at 97,867 (citing *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1377 (Fed. Cir. 1983) (concurring opinion of Nichols, J. (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)))).

In this appeal, we are faced not with a government claim for damages or for unliquidated progress payments, but with a contractor claim for breach damages submitted to the CO within the six-year CDA statute of limitations and timely appealed upon the CO's deemed denial of the claim. On the other hand, MAP did not timely appeal the default terminations. Thus, in making our decision, we are faced with some tension between the CDA's general provisions regarding review of decisions on contractor claims, 41 U.S.C. § 7104, and its provisions regarding the finality of contracting officer decisions, 41 U.S.C. § 7103(g). As in *Mactek*, though, we see no way to give appropriate force and effect to the CDA's express statement that a COFD is "final and conclusive and not subject to review" by any tribunal "unless an appeal or action is timely commenced as authorized by this chapter," except by declining to review contractor claims *to the extent* that they expressly or implicitly challenge final decisions that were not timely appealed.

There are cases in which both the Board and the U.S. Court of Federal Claims have found jurisdiction to review contractor claims that are independent of the unappealed default termination. *See, e.g., Roxco, Ltd. v. United States*, 60 Fed. Cl. 39, 44 (2004) (claims for differing site conditions, constructive changes, and breach of contract were independent claims separate and distinct from a challenge to the unappealed default termination); *C.H. Hyperbarics, Inc.*, ASBCA No. 49375 *et al.*, 04-1 BCA ¶ 32,568 (Board upheld default termination; claims for constructive changes and extra work considered separately); *Gramercy Machine Corp.*, ASBCA No. 18188, 74-2 BCA ¶ 10,706 (Board had jurisdiction of possible constructive changes claims and claim for value of inventory raised in defense to government claim for unliquidated progress payments following unappealed default termination).

However, MAP's claim in this appeal is an implicit challenge to COFDs that were not timely appealed. In the absence of timely appeals of DLA's termination decisions, we lack jurisdiction to consider MAP's claim.

## CONCLUSION

The government's motion to dismiss is granted and the appeal is dismissed for lack of jurisdiction with respect to Contracts 3228 and 3284.

Dated: 3 June 2016

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60139, Appeal of Military Aircraft Parts, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

10